IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GOLIB SUNNATOVICH          :        No. 3:26cv1160
RAKHMATOV,                 :
           Petitioner      :        (Judge Munley)
                           :
                           :
                           :
  v.                       :
                           :
WARDEN, Pike County Correctional  :
Facility,                  :
           Respondent      :

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM ORDER</u>

Petitioner Golib Sunnatovich Rakhmatov, a native and citizen of

Uzbekistan, is an immigration detainee in the custody of the United States

Department of Homeland Security ("DHS"), Immigration and Customs

Enforcement ("ICE") at Pike County Correctional Facility ("Pike CCF").  He seeks

immediate release through a *pro se* petition for writ of habeas corpus under 28

U.S.C. § 2241.[1] (Doc. 1).

Rakhmatov entered the United States in July 2023 west of San Ysidro,

California where urban Tijuana, Mexico meets layers of border fencing in the

rugged areas of the Tijuana River Valley. (Doc. 6-6, Resp. Ex. 5, I-213 Form, at

---

[1] Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Rakhmatov filed the instant petition while detained at a county prison in Pike County, Pennsylvania. He challenges the legality of his ongoing detention. Thus, the court has habeas jurisdiction over the petition. <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 443 (2004).

24).  An agent from United States Border Patrol apprehended the petitioner near the border.  After processing, DHS released petitioner on his own recognizance due to a lack of bed space in the San Diego area.  Id. at 24–25.  DHS also served the petitioner with a Notice to Appear ("NTA"), charging him with violating 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. Id. at 11.

It appears that Rakhmatov resided in Brooklyn and Northeast Philadelphia for several years.  He applied for asylum in August 2023. (Doc. 6-2, Resp. Ex. 1 at 3).  Rakhmatov's asylum application indicates that he fears being tortured in Uzbekistan due to his religious beliefs.

Rakhmatov was working as a commercial truck driver when he was apprehended.  That is, on May 27, 2025, ICE officers observed the petitioner sitting inside a tractor-trailer during a targeted enforcement operation. Id. at 2. ICE approached the petitioner.  He supplied the officers with his status. The officers took him into custody.

On February 20, 2026, following administrative proceedings, an IJ ordered the petitioner removed to Uzbekistan. (Doc. 6-4, Resp. Ex. 3, IJ Finston Order 02/20/2026).  The IJ denied Rakhmatov's application for asylum. Id.  Although asylum was denied, the IJ granted petitioner withholding of removal under 8 U.S.C. § 1231(b)(3).  Pursuant to Section 1231(b)(3)(A), the government may not

2

remove the petitioner to his native country.  In the nuances of immigration law, Rakhmatov is a detainee that has been ordered removed but granted withholding.

The fact that Rakhmatov has been ordered removed must be addressed at the outset.  When a non-citizen is ordered removed, the Attorney General is directed to remove the non-citizen from the United States within a period of 90 days—the removal period. 8 U.S.C.§ 1231(a)(1)(A).  "During the removal period, the Attorney General *shall* detain" the non-citizen. 8 U.S.C. § 1231(a)(2) (emphasis added).  Detention of noncitizens is thus required by statute during the 90-day removal period.

The removal period begins on the latest of the following: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

The latter two options do not apply to Rakhmatov's circumstances. Rakhmatov's removal period began on the date his removal order became administratively final.

By rule, a removal order becomes administratively final upon expiration of the time allotted for an appeal if an appeal is not filed within that time. See 8 C.F.R. §§ 1003.39, 1241.1(a).  Thirty days are allotted for an appeal.  8 C.F.R. § 1003.3(a)(2).  While both parties reserved their right to appeal the IJ order, neither pursued that avenue.

Accordingly, Rakhmatov's removal order became administratively final on March 23, 2026.  Thus, he entered the 90-day removal period on that date.  As of today's date, Rakhmatov is still within the 90-day removal period.  His detention is therefore mandated by statute.

In approximately two weeks, a different statute will apply to Rakhmatov's detention.  That is, a non-citizen subject to a removal order "*may* be detained beyond the removal period."  8 U.S.C. § 1231(a)(6) (emphasis added).  In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court construed this statute to permit detention "only for a period reasonably necessary to secure removal," and recognized a "presumptively reasonable" six-month detention period. Id. at 699, 701. After six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." Id. at 701.

4

The granted withholding portion of Rakhmatov's designation is addressed next.  As indicated above, the IJ granted Rakhmatov withholding of removal to Uzbekistan after determining that his "life or freedom would be threatened in that country because of the [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).  Put another way, if the government wants to remove Rakhmatov at this juncture, it must explore third-country options.  8 U.S.C. § 1231(b)(2)(E)(i)–(vii).

The due process issues addressed in Zadvydas are not yet ripe for disposition.  In a few months, Rakhmatov's detention will hit the six-month mark and his Zadvydas claim will be in a different position. See Alexander v. Att'y Gen. U.S., 495 F. App'x 274, 276–77 (3d Cir. 2012) ("Zadvydas does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief.").  It is too early to tell whether the government will be able to remove Rakhmatov to a third country in a timeframe within the reasonably foreseeable future.  Rakhmatov's petition will thus be dismissed without prejudice.

On one last note, Rakhmatov's petition also requests that he not be removed to a third country. (Doc. 7).  The record, however, contains no evidence that the government has even identified a country willing to accept the petitioner.

Any due process challenge to the third country removal process lacks ripeness and may be impacted by class action related determinations in <u>D.V.D. v. U.S. Dep't of Homeland Sec.</u>, 821 F. Supp. 3d 102, 167 (D. Mass. 2026), <u>app. filed</u>, No. 26-1212 (1st Cir. Feb. 28, 2026).  Therefore, the court will also deny that request for relief.

Accordingly, for the reasons set forth above, it is hereby **ORDERED** as follows:

1) Rakhmatov's motion for leave to proceed *in forma pauperis*, (Doc. 2), is **GRANTED**;

2) His Section 2241 petition for writ of habeas corpus is **DENIED** without prejudice to any future claim of unreasonable detention in the post-removal period; and

3) The Clerk of Court is directed to close this case.

Date: 6/15/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

6